DUANE MORRIS LLP
Gregory P. Gulia
Eric W. McCormick
1540 Broadway
New York, New York 10036-4086
(212) 692-1000

Attorneys for Plaintiffs

**FILED**
IN CLERK'S OFFICE
U.S. DISTRICT COURT E.D.N.Y.

★ MAR 1 0 2010 ★

BROOKLYN OFFICE

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NEW YORK

-----------------------------------------------------------X
UNILEVER SUPPLY CHAIN, INC. and
CONOPCO, INC. D/B/A UNILEVER,

        Plaintiffs,

   -against-

I & I WHOLESALE FOOD INC.,
I & I DISTRIBUTORS and
IGOR MAGIDOV,

        Defendants.
-----------------------------------------------------------X

**CV10 - 1077**

**COMPLAINT
AND JURY DEMAND**

DEARIE, CH. J

REYES, M.J

Plaintiffs, Unilever Supply Chain, Inc. and Conopco, Inc. d/b/a Unilever, by their

undersigned attorneys, Duane Morris LLP, for their Complaint allege as follows:

## SUBSTANCE OF THE ACTION

   1.  This action arises out of Defendants' unlawful use of Plaintiffs' federally

registered trademarks including the famous HELLMANN'S® trademark and logo, which

provides the basis for Plaintiffs' claims for federal trademark counterfeiting, trademark

infringement and unfair competition under Sections 32(l) and 43(a) of the Trademark Act of

1946 (the "Lanham Act") (15 U.S.C. §§ 1114(l) and 1125(a)), federal trademark dilution under

Section 43(c) of the Lanham Act (15 U.S.C. § 1125(c)(1)), and for substantial and related claims

of unfair competition, deceptive trade practices, dilution, tarnishment and injury to business

reputation, and unjust enrichment arising under the laws of the State of New York.

## JURISDICTION AND VENUE

2.      This Court has jurisdiction under Section 39 of the Lanham Act, 15 U.S.C. §
1121, Sections 1332(a), 1338(a), 1338(b) of the Judicial Code (28 U.S.C. § 1332(a), § 1338(a)
and § 1338(b)), and under principles of supplemental and supplementary jurisdiction.  This Court
has personal jurisdiction over Defendants because, inter alia, they sell and market their products
to customers located in the State of New York.  The amount in controversy exceeds the sum of
$75,000, exclusive of interest and costs.  Venue properly lies in this District under Sections
1391(b) and (c) of the Judicial Code, 28 U.S.C. § 1391(b) and § 1391(c), because Defendants do
business in and/or have substantial contacts with and/or may be found in the Eastern District of
New York, and a substantial portion of the events at issue have arisen and/or will arise in this
judicial district.

## PARTIES

3.      Plaintiff Unilever Supply Chain, Inc. ("Unilever Supply Chain") is a corporation
duly organized and existing under the laws of Delaware with offices at 1 John Street, Clinton,
Connecticut 06413.

4.      Plaintiff Unilever Supply Chain is a wholly-owned subsidiary of Plaintiff
Conopco, Inc. d/b/a Unilever ("Conopco").  Plaintiff Unilever Supply Chain is the owner of
numerous U.S. trademark registrations for the famous HELLMANN'S® trademark and logo (the
"HELLMANN'S® Mark").  Plaintiff Unilever Supply Chain is the owner of the federally
registered famous trademark BRING OUT THE BEST® (the "BRING OUT THE BEST®
Mark").

5.      Plaintiff Conopco is a corporation duly organized and existing under the laws of
New York with offices at 700-800 Sylvan Avenue, Englewood Cliffs, New Jersey 07632.

2

Plaintiffs Unilever Supply Chain and Conopco are collectively hereinafter referred to as "Plaintiffs." Plaintiff Conopco is Unilever Supply Chain's exclusive licensee of the HELLMANN'S® mark and the BRING OUT THE BEST® Mark.

6.     Upon information and belief, Defendant Igor Magidov ("Magidov") is an individual who operates under various fictitious names such as I & I Wholesale Food Inc. and I & I Distributors to purchase and sell various products. Upon information and belief, Magidov resides at 1845 82nd Street, #A4, Brooklyn, New York 11214.

7.     Upon information and belief, Defendant Magidov directs and exercises control over the activities and operations of Defendant I & I Wholesale Food Inc. ("I & I Wholesale"), including the activities that give rise to New York jurisdiction in this matter, and benefits from those activities.

8.     Upon information and belief, Defendant Magidov directs and exercises control over the activities and operations of Defendant I & I Distributors, including the activities that give rise to New York jurisdiction in this matter, and benefits from those activities.

9.     Upon information and belief, Defendant I & I Wholesale is not properly incorporated under the laws of any state or district of the United States. Upon information and belief, I & I Wholesale is a fictitious name used by Magidov. Upon information and belief, I & I Wholesale uses 1845 82nd Street, #A4, Brooklyn, New York 11214 as its address.

10.     Upon information and belief, Defendant I & I Distributors is not properly incorporated under the laws of any state or district of the United States. Upon information and belief, I & I Wholesale is a fictitious name used by Magidov. Upon information and belief, I & I Distributors uses 1845 82nd Street, #A4, Brooklyn, New York 11214 as its address.

3

11.     Defendants I & I Wholesale, I & I Distributors and Magidov are collectively hereinafter referred to as "Defendants."

FACTS COMMON TO ALL CLAIMS FOR RELIEF

A.     Plaintiffs' Activities

12.     Plaintiffs and their predecessors and their licensees have continuously used the HELLMANN'S® Mark in the United States for mayonnaise and other food products since at least as early as 1926.

13.     The famous HELLMANN'S® Mark has appeared on product packaging, advertising, promotional materials, displays and the like.

14.     The HELLMANN'S® Mark is the subject of the following valid, subsisting and incontestable U.S. trademark registration, among others:

| MARK | REGISTRATION NO./ DATE | GOODS AND SERVICES |
|------|------------------------|--------------------|
| HELLMANN'S | 514,280<br>August 23, 1949 | "Mayonnaise, salad dressings, salad spreads, and tartar sauce" |

This incontestable registration serves as conclusive evidence of Plaintiffs' exclusive right to use HELLMANN'S® on the goods specified therein.  A copy of the registration is attached hereto as Exhibit 1 and incorporated herein by reference.

15.     In addition, the HELLMANN'S® Mark is the subject of the following valid and subsisting U.S. trademark registration:

4

| MARK | REGISTRATION NO./ DATE | GOODS AND SERVICES |
|---|---|---|
| HELLMANN'S (Logo) | 3,232,270 April 24, 2007 | Mayonnaise and other products |

This registration serves as prima facie evidence of Plaintiffs' exclusive right to use

HELLMANN'S® on the goods specified therein.  A copy of the registration is attached hereto as

Exhibit 2 and incorporated herein by reference.

      16.    The BRING OUT THE BEST® Mark is the subject of the following valid,

subsisting and incontestable U.S. trademark registration:

| MARK | REGISTRATION NO./ DATE | GOODS AND SERVICES |
|---|---|---|
| BRING OUT THE BEST | 1,478,873 March 1, 1988 | Mayonnaise |

This incontestable registration serves as conclusive evidence of Plaintiffs' exclusive right to use

the BRING OUT THE BEST® Mark on the goods specified therein.  A copy of the registration

is attached hereto as Exhibit 3 and incorporated herein by reference.

      17.    HELLMANN'S® brand products are currently available and sold to consumers

throughout this District, this State, and the United States.

      18.    Over the years, the volume of sales of goods in the United States sold under the

HELLMANN'S® Mark and the BRING OUT THE BEST® Mark has been enormous.

      19.    During the more than eighty years that Plaintiffs and their predecessors and their

licensees have been using the HELLMANN'S® trademark in U.S. commerce, they have invested

significant amounts of time, effort and hundreds of millions of dollars to market and to maintain

the highly regarded image of HELLMANN'S® products and the famous HELLMANN'S®

5

brand. As a result of those activities and efforts, the HELLMANN'S® Mark is famous and was famous at all times relevant to this action. The HELLMANN'S Mark enjoys a reputation as signifying goods of the highest quality.

20.     Plaintiffs and their predecessors have used the BRING OUT THE BEST® Mark in U.S. commerce for more than twenty years. During that time period, Plaintiffs and their predecessors and their licensees have invested significant amounts of time, effort and money to market and to maintain the highly regarded image of the famous BRING OUT THE BEST® Mark. As a result of those activities and efforts, the BRING OUT THE BEST® Mark is famous and was famous at all times relevant to this action. The BRING OUT THE BEST® Mark enjoys a reputation as signifying goods of the highest quality.

21.     Due to Plaintiffs' and their predecessors' and their licensees' long and exclusive use of the HELLMANN'S® Mark and the BRING OUT THE BEST® Mark, consumers have come to associate those marks solely with Plaintiffs and their products and the marks symbolize and represent goodwill of enormous value to Plaintiffs.

B.     Defendants' Unlawful Activities

22.     Upon information and belief, one or more of Defendants have been and/or are currently manufacturing, distributing, offering for sale and/or selling thirty (30) pound mayonnaise products that are not authorized by Plaintiffs but which bear counterfeit HELLMANN'S labels (hereinafter, the "Counterfeit HELLMANN'S Products"). Attached hereto as Exhibit 4 is a photograph showing one of the Counterfeit HELLMANN'S Products.

23.     The label used on the Counterfeit HELLMANN'S Products is not a label that Plaintiffs make or use on Plaintiffs' genuine HELLMANN'S® brand products.

6

24.     Numerous features of the label used on the Counterfeit HELLMANN'S Products indicate that the label is counterfeit.  The label used on the Counterfeit HELLMANN'S Products displays an incorrect trademark ownership statement.  The trademark ownership statement on the label used on the Counterfeit HELLMANN'S Products incorrectly reads "HELLMANN'S, BRING OUT THE BEST and THE CARTOUCHE of the Unilever Group of Companies."  The label used by Plaintiffs on the genuine HELLMANN'S® brand products reads "HELLMANN'S, BRING OUT THE BEST and the CARTOUCHE <u>DEVICE</u> <u>are registered trademarks</u> of the Unilever Group of Companies." (emphasis added).

25.     The label used on the Counterfeit HELLMANN'S Products displays the weight of the product as "30 LB."  The label used on Plaintiffs' genuine thirty (30) pound HELLMANN'S® product displays the weight of the product as "30 LBS (13.62 kg)."

26.     The label used on the Counterfeit HELLMANN'S Products does not display the UNILEVER FOOD SOLUTIONS logo anywhere on the label.  The label used on Plaintiffs' genuine thirty (30) pound HELLMANN'S® product displays the UNILEVER FOOD SOLUTIONS logo on the right side of the label.

27.     Upon information and belief, the Counterfeit HELLMANN'S Products are being sold by one or more of the Defendants past the designated shelf life of the products.

28.     On February 9, 2010, Plaintiffs' counsel sent a letter by FedEx to Defendants advising them of Plaintiffs' rights in Plaintiffs' HELLMANN'S® Mark and demanding that Defendants cease all use of Plaintiffs' HELLMANN'S® Mark and the label used on the Counterfeit HELLMANN'S Products.  Attached hereto as Exhibit 5 is a copy of Plaintiffs' February 9, 2010 letter to Defendants.

7

29.    Defendants did not respond to the letter from Plaintiffs' counsel dated February 9, 2010.

30.    After Defendants did not respond to Plaintiffs' February 9, 2010 letter, Plaintiffs' counsel left a voicemail message for Defendant Magidov on February 17, 2010 advising him of Plaintiffs' rights in Plaintiffs' HELLMANN'S® Mark and demanding that Defendants cease all use of Plaintiffs' HELLMANN'S® Mark and the label used on the Counterfeit HELLMANN'S Products.  As of the date of this Complaint, Defendant Magidov has not responded to the voicemail message left for him by Plaintiffs' counsel.

31.    Defendants' unlawful use of the HELLMANN'S® Mark is with the intent and purpose of trading on the extensive goodwill built up by Plaintiffs in their HELLMANN'S® Mark and Plaintiffs' BRING OUT THE BEST® Mark and to reap the benefits of years of effort and investment by Plaintiffs to create public recognition of their marks.

32.    Defendants' conduct is intentionally fraudulent, malicious, willful and wanton.

### FIRST CLAIM FOR RELIEF
### FEDERAL TRADEMARK COUNTERFEITING
### (15 U.S.C. §1114(1))

33.    Plaintiffs reallege paragraphs 1 through 32 above and incorporate them by reference as if fully set forth herein.

34.    Defendants used and continue to use the HELLMANN'S® Mark and the BRING OUT THE BEST® Mark with the intent and purpose of trading on the extensive goodwill built up by Plaintiffs and their predecessors and their licensees in those marks and to reap the benefits of years of effort and investment by Plaintiffs and their predecessors and their licensees to create public recognition of their marks, and with reckless indifference to Plaintiffs' rights in their marks.

8

35.     Defendants' use of the HELLMANN'S® Mark and the BRING OUT THE BEST® Mark in connection with the Counterfeit HELLMANN'S Products constitutes use of counterfeit trademarks.

36.     Defendants' aforesaid acts constitute trademark counterfeiting in violation of Section 32(1) of the Lanham Act, 15 U.S.C. § 1114(1), because Defendants used and continue to use spurious marks which are identical to or substantially indistinguishable from Plaintiffs' federally registered HELLMANN'S® Mark and the BRING OUT THE BEST® Mark in connection with the sale, offering for sale, distribution or advertising of the Counterfeit HELLMANN'S Products and such use is likely to cause confusion, or to cause mistake, or to deceive.

37.     Defendants' aforesaid acts constitute trademark counterfeiting in violation of Section 32(1) of the Lanham Act, 15 U.S.C. § 1114(1), because Defendants counterfeited Plaintiffs' federally registered HELLMANN'S® Mark and the BRING OUT THE BEST® Mark and applied such counterfeit marks to packages, labels, signs, prints, wrappers, receptacles or advertisements intended to be used in commerce upon or in connection with the sale, offering for sale, distribution, or advertising of goods on or in connection with which such use is likely to cause confusion, or to cause mistake, or to deceive.

38.     Defendants' conduct is causing immediate and irreparable injury to Plaintiffs, and to their goodwill and reputation, and will continue both to damage Plaintiffs and to confuse the public unless enjoined by this Court.  Plaintiffs have no adequate remedy at law.

SECOND CLAIM FOR RELIEF
FEDERAL TRADEMARK INFRINGEMENT
(15 U.S.C. § 1114(1))

39.     Plaintiffs reallege paragraphs 1 through 38 above and incorporate them by reference as if fully set forth herein.

40.     Defendants' use of the HELLMANN'S® Mark and the BRING OUT THE BEST® Mark in connection with the Counterfeit HELLMANN'S Products infringes on Plaintiffs' exclusive rights in their federally-registered marks, is likely to cause confusion, mistake, or deception, and constitutes trademark infringement, in violation of Section 32(1) of the Lanham Act, 15 U.S.C. § 1114(1).

41.     Defendants have used the HELLMANN'S® Mark and the BRING OUT THE BEST® Mark in connection with the Counterfeit HELLMANN'S Products with full knowledge of the long and extensive prior use of those marks by Plaintiffs.

42.     Defendants' conduct is causing immediate and irreparable injury to Plaintiffs, and to their goodwill and reputation, and will continue both to damage Plaintiffs and to confuse the public unless enjoined by this Court.  Plaintiffs have no adequate remedy at law.

THIRD CLAIM FOR RELIEF
FEDERAL UNFAIR COMPETITION
(15 U.S.C. §1125(a)(1))

43.     Plaintiffs reallege paragraphs 1 through 42 above and incorporate them by reference as if fully set forth herein.

44.     Defendants' use of the HELLMANN'S® Mark and the BRING OUT THE BEST® Mark in connection with the Counterfeit HELLMANN'S Products is likely to cause confusion, mistake, or deception, and constitutes a false designation of origin, a false description and representation of Defendants' goods and a false representation that Defendants' goods are sponsored, endorsed, licensed, authorized and/or affiliated or connected with Plaintiffs in violation of Section 43 of the Lanham Act, 15 U.S.C. §1125(a)(1).

45.     Defendants used and continue to use the HELLMANN'S® Mark and the BRING OUT THE BEST® Mark in connection with the Counterfeit HELLMANN'S Products with full

knowledge of the long and extensive prior use of those marks by Plaintiffs and their predecessors and their licensees.

46.     Defendants' acts are in violation of Section 43(a) of the Lanham Act, 15 U.S.C. § 1125(a).

47.     Defendants' conduct has caused and will continue to cause irreparable injury to Plaintiffs unless enjoined by this Court.  Plaintiffs have no adequate remedy at law.

FOURTH CLAIM FOR RELIEF
FEDERAL DILUTION
(15 U.S.C. § 1125(c)(1))

48.     Plaintiffs reallege paragraphs 1 through 47 above and incorporate them by reference as if fully set forth herein.

49.     By reason of Plaintiffs' continuous and extensive sales, use and advertising of their products bearing the HELLMANN'S® Mark and the BRING OUT THE BEST® Mark, those marks are famous and highly distinctive of Plaintiffs and are uniquely associated with Plaintiffs.

50.     Defendants' above-described actions occurred long after Plaintiffs' HELLMANN'S® Mark and the BRING OUT THE BEST® Mark acquired fame, and will, unless restrained, likely dilute the distinctive quality of Plaintiffs' famous HELLMANN'S® Mark and Plaintiffs' famous BRING OUT THE BEST® Mark by destroying the exclusive association between Plaintiffs' marks and their goods and services, and/or otherwise lessening the capacity of the marks to identify Plaintiffs and their goods exclusively and/or tarnishing Plaintiffs' valuable marks by undermining and damaging the goodwill and reputation associated with the marks.

11

51.     Defendants' aforesaid actions are in violation of § 43(c)(1) of the Lanham Act, 15 U.S.C. § 1125(c)(1), and have already caused Plaintiffs irreparable damage and will, unless restrained, continue to so damage Plaintiffs, which have no adequate remedy at law.

FIFTH CLAIM FOR RELIEF
COMMON LAW UNFAIR COMPETITION

52.     Plaintiffs reallege paragraphs 1 through 51 above and incorporate them by reference as if fully set forth herein.

53.     Defendants were aware of Plaintiffs' prior use of Plaintiffs' registered HELLMANN'S® Mark and Plaintiffs' registered BRING OUT THE BEST® Mark, and used the HELLMANN'S® Mark and the BRING OUT THE BEST® Mark in disregard of Plaintiffs' prior use and rights in those marks.

54.     Defendants' use of the HELLMANN'S® Mark and the BRING OUT THE BEST® Mark has resulted in the misappropriation of and trading upon Plaintiffs' goodwill and business reputation at Plaintiffs' expense and without any expense to Defendants.  The effect of Defendants' misappropriation of the goodwill symbolized by Plaintiffs' marks is to unjustly enrich Defendants, damage Plaintiffs and confuse and/or deceive the public.

55.     Defendants' conduct constitutes unfair competition with Plaintiffs, all of which has caused and will continue to cause irreparable injury to Plaintiffs' goodwill and reputation unless enjoined by this Court.  Plaintiffs have no adequate remedy at law.

SIXTH CLAIM FOR RELIEF
DILUTION AND INJURY TO BUSINESS REPUTATION
(N.Y. General Business law §360-l)

56.     Plaintiffs reallege paragraphs 1 through 55 above and incorporate them by reference as if fully set forth herein.

12

57.     Defendants' unlawful use of the HELLMANN'S® Mark and the BRING OUT THE BEST® Mark in connection with the Counterfeit HELLMANN'S Products will cause the dilution of the distinctive quality of Plaintiffs' marks, resulting in injury to Plaintiffs' business reputation.

58.     Defendants' use of the HELLMANN'S® Mark and the BRING OUT THE BEST® Mark in connection with goods not controlled or otherwise subject to Plaintiffs' control is causing and will continue to cause dilution and/or injury to the reputation of Plaintiffs and Plaintiffs' goods.

59.     By reason of the foregoing, Plaintiffs are entitled to injunctive relief under New York General Business Law §360-l.

60.     Defendants' conduct has caused and will continue to cause irreparable injury to Plaintiffs unless enjoined by this Court.  Plaintiffs have no adequate remedy at law.

SEVENTH CLAIM FOR RELIEF
DECEPTIVE TRADE PRACTICES (N.Y. General Business Law § 349)

61.     Plaintiffs reallege paragraphs 1 through 60 above and incorporate them by reference as if fully set forth herein.

62.     By reason of the acts and practices set forth above, Defendants have and are engaged in deceptive trade practices or acts in the conduct of a business, trade or commerce, or furnishing of goods and/or services, in violation of § 349 of the New York General Business Law.

63.     The public is likely to be damaged as a result of the deceptive trade practices or acts engaged in by Defendants.

64.     Unless enjoined by the Court, Defendants will continue said deceptive trade practices or acts, thereby deceiving the public and causing immediate and irreparable damage to Plaintiffs.  Plaintiffs have no adequate remedy at law.

<u>EIGHTH CLAIM FOR RELIEF</u>
<u>UNJUST ENRICHMENT</u>

65.     Plaintiffs reallege paragraphs 1 through 64 above and incorporate them by reference as if fully set forth herein.

66.     By the reason of the acts and practices set forth above, Defendants have been unjustly enriched by their unlawful conduct at the expense of Plaintiffs.  Defendants' acts have unjustly enriched and wrongfully benefited Defendants, in an amount to be determined at trial and to which Plaintiffs are rightfully entitled.

WHEREFORE, Plaintiffs demand judgment as follows:

1.      Preliminarily and permanently enjoining Defendants, their employees, agents, officers, directors, attorneys, successors, affiliates, subsidiaries and assigns, and all those in active concert and participation with Defendants from:

(a)     using or authorizing any third party to use as a trademark, service mark, domain name, business name, trade name or symbol of origin Plaintiffs' HELLMANN'S® Mark or Plaintiffs' BRING OUT THE BEST® Mark and/or any other counterfeit, copy, simulation, confusingly similar variation, or colorable imitation of these marks in any manner or form, on or in connection with any business, products or services, or in the marketing, advertising and promotion of same;

(b)    imitating, copying or making any Counterfeit use of Plaintiffs'
HELLMANN'S® Mark or Plaintiffs' BRING OUT THE BEST® Mark or
any copy, simulation, variation or imitation thereof;

(c)    making or displaying any statement or representation that is likely to lead
the public or the trade to believe that Defendants' goods are in any manner
associated or affiliated with or approved, endorsed, licensed, sponsored,
authorized or franchised by or are otherwise connected with Plaintiffs;

(d)    using or authorizing any third party to use in connection with the
rendering, offering, advertising, or promotion of any goods, any false
description, false representation, or false designation of origin, or any
marks, names, words, symbols, devices or trade dress which falsely
associate such goods or services with Plaintiffs or tend to do so;

(e)    diluting the distinctive quality of or tarnishing Plaintiffs'
HELLMANN'S® Mark or Plaintiffs' BRING OUT THE BEST® Mark;

(f)    engaging in any other activity constituting unfair competition with
Plaintiffs, or constituting an infringement of Plaintiffs' HELLMANN'S®
Mark or Plaintiffs' BRING OUT THE BEST® Mark, or of Plaintiffs'
rights therein; and

(g)    aiding, assisting or abetting any other party in doing any act prohibited by
sub-paragraphs (a) through (f).

2.    Requiring Defendants to retrieve and recall from all distributors, retail
establishments or wholesale establishments and to cease the distribution or sale of any and all

15

goods sold in connection with or bearing Plaintiffs' HELLMANN'S® Mark or Plaintiffs' BRING OUT THE BEST® Mark.

3. Directing that Defendants deliver for destruction all goods, advertisements for such, and other materials in their possession, or under their control, incorporating or bearing Plaintiffs' HELLMANN'S® Mark or Plaintiffs' BRING OUT THE BEST® Mark any other simulations, variations or colorable imitations of Plaintiffs' marks, used alone or in combination with other words and/or designs.

4. Directing such other relief as the Court may deem appropriate to prevent the trade and public from deriving the erroneous impression that any product or service manufactured, sold, distributed, licensed or otherwise offered, circulated or promoted by Defendants is authorized, sponsored by, or otherwise affiliated with Plaintiffs or related in any way to Plaintiffs' products.

5. Directing that Defendants file with the Court and serve upon Plaintiffs' counsel within thirty (30) days after entry of such judgment, a report in writing under oath, setting forth in detail the manner and form in which Defendants have complied therewith.

6. Awarding Plaintiffs such damages as they have sustained or will sustain by reason of Defendants' trademark counterfeiting, including in accordance with 15 U.S.C. § 1117(b) and (c), the greater of treble Defendants' wrongful profits resulting from its aforesaid acts and treble Plaintiffs' damages, or an award of statutory damages in the sum of $2,000,000 per each type of goods sold, offered for sale, or distributed by Defendants in connection with each of the counterfeit marks, together with an award of prejudgment interest, as well as a mandatory award of Plaintiffs' attorneys' fees and costs.

16

7.      Awarding Plaintiffs such damages as they have sustained or will sustain by reason of Defendants' trademark infringement, unfair competition, dilution and injury to business reputation and deceptive trade practices.

8.      Awarding Plaintiffs all gains, profits, property and advantages derived by Defendants from such conduct, and pursuant to 15 U.S.C. § 1117, awarding Plaintiffs three times the amount of the actual damages sustained as a result of Defendants' violations of the Lanham Act.

9.      Awarding Plaintiffs exemplary and punitive damages to deter any future willful infringement by Defendants as the Court finds appropriate.

10.     Awarding Plaintiffs their costs and disbursements incurred in this action, including their reasonable attorneys' fees.

11.     Awarding Plaintiffs interest, including pre-judgment interest, on the foregoing sums.

## JURY DEMAND

Plaintiffs hereby demand a trial by jury pursuant to Fed. R. Civ. P. 38.

Dated:  New York, New York
        March 10, 2010

                                          Respectfully submitted,

                                          DUANE MORRIS LLP

                                          By: _____

                                          Gregory P. Gulia
                                          Eric W. McCormick
                                          1540 Broadway
                                          New York, New York 10036-4086
                                          Telephone: (212) 692-1000
                                          Fax: (212) 692-1020

                                          Attorneys for Plaintiffs
                                          Unilever Supply Chain, Inc. and
                                          Conopco, Inc. d/b/a Unilever

Registered Aug. 23, 1949

# Registration No. 514,280

## PRINCIPAL REGISTER
## Trade-Mark
### Section 2 (f)

# UNITED STATES PATENT OFFICE

### The Best Foods, Inc., New York, N. Y.

#### Act of 1946

#### Application October 21, 1948, Serial No. 567,382

# HELLMANN'S

**(Statement)**

The Best Foods, Inc., a corporation duly organized under the laws of the State of New Jersey and located and doing business at 1 East 43rd Street, New York 17, N. Y., has adopted and is using the trade-mark shown in the accompanying drawing, for MAYONNAISE, SALAD DRESSINGS, SANDWICH SPREAD, AND TARTAR SAUCE, in Class 46, Foods and ingredients of foods, and presents herewith five specimens showing the trade-mark as actually used in connection with such goods, the trade-mark being applied to the containers for the goods and to the cartons and labels affixed to the containers for the goods, and requests that the same be registered in the United States Patent Office on the Principal Register in accordance with the provisions of section 2(f) of the act of July 5, 1946.

The trade-mark was first used by a predecessor of the applicant on August 1, 1926, and was first used in commerce among the several States which may lawfully be regulated by Congress on that date.

Applicant is the owner of the mark registered January 22, 1929, under No. 252,155.

**(Declaration)**

E. C. Haring, being duly sworn, deposes and says that he is the assistant secretary of The Best Foods, Inc., the applicant named in the foregoing statement; that he believes that said corporation is the owner of the trade-mark which is in use in commerce among the several States; that no other person, firm, corporation or association, to the best of his knowledge and belief, has the right to use such trade-mark in commerce which may lawfully be regulated by Congress either in the identical form thereof or in such near resemblance thereto as might be calculated to deceive; that the drawing and description truly represent the trade-mark sought to be registered; that the specimens show the trade-mark as actually used in connection with the goods; that the facts set forth in the statement are true; and that the claim of distinctiveness is based on the substantially exclusive and continuous use of the mark by the applicant for the period of five years next preceding the filing of this application in commerce which may lawfully be regulated by Congress.

THE BEST FOODS, INC.,
By E. C. HARING,
*Assistant Secretary.*

Int. Cls.: 29 and 30

Prior U.S. Cl.: 46

United States Patent and Trademark Office

Renewal

Reg. No. 514,280

Registered Aug. 23, 1949

OG Date June 13, 1989

## TRADEMARK
## PRINCIPAL REGISTER

# HELLMANN'S

CPC INTERNATIONAL INC. (DELA-
WARE CORPORATION)
INTERNATIONAL PLAZA
ENGLEWOOD CLIFFS, NJ 07632, BY
MERGER AND CHANGE OF NAME
BEST FOODS, INC., THE (NEW
JERSEY CORPORATION) NEW YORK,
NY

OWNER OF U.S. REG. NO. 252,155.

SEC. 2(F).

FOR: MAYONNAISE, SALAD DRESS-
INGS, SANDWICH SPREAD, AND
TARTAR SAUCE, IN CLASS 46 (INT.
CLS. 29 AND 30).

FIRST USE 8-1-1926; IN COMMERCE
8-1-1926.

SER. NO. 567,382, FILED 10-21-1948.

*In testimony whereof I have hereunto set my hand
and caused the seal of The Patent and Trademark
Office to be affixed on June 13, 1989.*

COMMISSIONER OF PATENTS AND TRADEMARKS

**Int. Cl.: 30**

**Prior U.S. Cl.: 46**

## United States Patent and Trademark Office

**Reg. No. 3,232,270**
Registered Apr. 24, 2007

### TRADEMARK
### PRINCIPAL REGISTER



UNILEVER SUPPLY CHAIN, INC. (DELAWARE CORPORATION)
1 JOHN STREET
CLINTON, CT 06413

FOR: MAYONNAISE, SANDWICH SPREADS CONTAINING MAYONNAISE AND RELISH, MUSTARD AND TARTAR SAUCE, IN CLASS 30 (U.S. CL. 46).

FIRST USE 6-0-2004; IN COMMERCE 6-0-2004.

OWNER OF U.S. REG. NOS. 514,280, 2,921,487 AND OTHERS.

THE COLORS BLUE AND WHITE ARE CLAIMED AS A FEATURE OF THE MARK.

THE BACKGROUND INCLUDING THE BORDER IS PREDOMINANTLY DARK BLUE; THE CENTER OF THE LOGO AND RIBBON DEVICE ARE BOTH A LIGHT BLUE; THE CURVED LINES AT THE TOP AND BOTTOM AS WELL AS THE LETTERS IN THE WORD HELLMANN'S ARE ALL WHITE.

SER. NO. 76-663,775, FILED 7-27-2006.

LESLEY LAMOTHE, EXAMINING ATTORNEY

Int. Cl.: 29

Prior U.S. Cl.: 46

## United States Patent and Trademark Office

Reg. No. 1,478,873
Registered Mar. 1, 1988

## TRADEMARK
### PRINCIPAL REGISTER

## BRING OUT THE BEST

CPC INTERNATIONAL INC. (DELAWARE CORPORATION)
INTERNATIONAL PLAZA
ENGLEWOOD CLIFFS, NJ 07632

FOR: MAYONNAISE, IN CLASS 29 (U.S. CL. 46).

FIRST USE 5-0-1987; IN COMMERCE 5-0-1987.

SER. NO. 666,494, FILED 6-15-1987.

JERRY L. PRICE, EXAMINING ATTORNEY

DuaneMorris*

FIRM and AFFILIATE OFFICES

NEW YORK
LONDON
SINGAPORE
LOS ANGELES
CHICAGO
HOUSTON
HANOI
PHILADELPHIA
SAN DIEGO
SAN FRANCISCO
BALTIMORE
BOSTON
WASHINGTON, DC
LAS VEGAS
ATLANTA
MIAMI
PITTSBURGH
NEWARK
BOCA RATON
WILMINGTON
CHERRY HILL
PRINCETON
LAKE TAHOE
HO CHI MINH CITY

GREGORY P. GULIA
DIRECT DIAL: 212.692.1027
FAX: 212.692.1020
E-MAIL: gpgulia@duanemorris.com

www.duanemorris.com

February 9, 2010

**BY FEDEX**

Mr. Igor Magidov
I & I Wholesale Food Inc./
I & I Distributors
1845 82nd Street
# A4
Brooklyn, NY  11214

> Re:    **Your Illegal Distribution and Sale of**
> **Unauthorized HELLMANN'S Mayonnaise Products**
> **Our Ref.:  Y0759-00320**

Dear Mr. Magidov:

We are trademark litigation counsel to Unilever Supply Chain, Inc. and its affiliates (collectively, "Unilever").  Unilever is the manufacturer of the famous HELLMANN'S® brand mayonnaise products and owner of the famous HELLMANN'S® trademarks, logos, trade dress, artwork and copyrights (collectively, the "Unilever Intellectual Property").  We are writing to you concerning your company's distribution and sale of unauthorized HELLMANN'S mayonnaise products.

The HELLMANN'S® brand is among the most beloved and popular brands in the United States.  Unilever and its predecessors have been using the famous HELLMANN'S® trademark in the United States since at least as early as 1926.  Unilever has invested significant amounts of time, effort and financial resources developing and marketing the Unilever Intellectual Property and the products marketed and sold thereunder.  As a result of Unilever's extensive marketing and promotional efforts for more than 80 years, sales of the HELLMANN'S® brand products have been enormous and the Unilever Intellectual Property has engendered widespread fame and recognition in the United States.

Mr. Igor Magidov
I & I Wholesale Food Inc./I & I Distributors
February 9, 2010
Page 2 of 3

The strength and integrity of the HELLMANN'S® trademark is further bolstered and protected by numerous federal trademark registrations. These registrations include the following incontestable registrations: Registration Nos. 514,280; 1,236,589; and 3,232,270 among others.

We have recently received information indicating that your company has been distributing and selling 30 pound HELLMANN'S mayonnaise products that are not authorized by Unilever and feature a counterfeit HELLMANN'S label (hereinafter, the "Unauthorized HELLMANN'S Products"). A photograph showing one of the Unauthorized HELLMANN'S Products is enclosed.

There are numerous features of the label used on the Unauthorized HELLMANN'S Products that indicate that the label is fake/counterfeit. For example, the label for the Unauthorized HELLMANN'S Products displays an incorrect trademark ownership statement. The trademark ownership statement on the counterfeit label incorrectly reads "HELLMANN'S, BRING OUT THE BEST and THE CARTOUCHE of the Unilever Group of Companies." The label should read "HELLMANN'S, BRING OUT THE BEST and the CARTOUCHE DEVICE are registered trademarks of the Unilever Group of Companies." (emphasis added). We believe that these products are expired products that have been labeled with a fake label in order to change the expiration date.

Your activities violate a host of federal and state intellectual property and anti-counterfeiting laws and constitute, among other things, trademark counterfeiting, trademark infringement, trademark dilution, trade dress infringement, trade dress dilution, unfair competition and copyright infringement. In a court action, Unilever would be entitled to not only immediate and permanent injunctive relief against you and your company, but also to recovery of your profits, statutory damages, treble damages, and Unilever's attorney's fees and costs incurred in connection with litigating the matter.

Given the extremely serious nature of this matter, on behalf of Unilever, we demand that you, your company, and all those acting with you and/or your company:

(i) immediately and permanently cease all manufacture, distribution, sale, purchase and advertising of the Unauthorized HELLMANN'S Products;

(ii) provide us with a written statement indicating how many units of the Unauthorized HELLMANN'S Products remain in your inventory;

(iii) provide us with a written statement indicating (in units and dollar volume) the quantity of Unauthorized HELLMANN'S Products that you and your company have sold and, if applicable, purchased to date;

(iv) provide us in writing with the identity of and full contact information for all companies or persons who supplied the Unauthorized HELLMANN'S Products to you and/or

Mr. Igor Magidov
I & I Wholesale Food Inc./I & I Distributors
February 9, 2010
Page 3 of 3

your company and to whom you and/or your companies distributed the Unauthorized HELLMANN'S Products;

    (v) provide us in writing with the identity of and full contact information for all companies or persons who printed and/or supplied the fake/counterfeit label displayed on the Unauthorized HELLMANN'S Products to you and/or your company; and

    (vi) provide us with copies of all orders, invoices and other documentation regarding the Unauthorized HELLMANN'S Products.

    We demand that you comply fully with the foregoing demands and respond in writing by no later than the close of business on **February 15 , 2010**. If you fail to respond or refuse to comply, we will have no choice but to recommend that Unilever take all appropriate legal action against you to protect its valuable intellectual property rights.

    This letter is without prejudice to any of Unilever's rights, claims and/or remedies, all of which are hereby expressly reserved.

                  Sincerely,

                  Gregory P. Gulia

cc:  Eric W. McCormick, Esq.
      Christopher J. Rooney, Esq.

Encl.





